Charles Lee **FIGHT, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 19A01–0103–CR–89.

Court of Appeals of Indiana.

Dec. 14, 2001.

Steven E. Ripstra, Jasper, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Martha Warren–Rosenfeld, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Defendant Appellant Charles Lee Fight, Jr. (Fight) appeals his convictions of three counts of attempted murder, Class A felonies, Ind.Code §§ 35–41–5–1 and 35–42–1–1; and one count of criminal mischief, a Class D felony, Ind.Code § 35–43–1–2.

We affirm.

Fight presents two issues which we expand and restate as three:

I. Whether the State presented evidence sufficient to support Fight's convictions of three counts of attempted murder.

II. Whether Fight's convictions and sentences for three counts of attempted murder violate his constitutional right against double jeopardy.

III. Whether the trial court erred in sentencing Fight.

On March 30, 2000, Officer Wilson attempted to serve divorce papers on Fight at his home. Fight began to act irrationally when he was told the subject matter of the papers, so Officer Wilson left the property to arrange for back-up. Officer Wilson returned with Officers Kieser and Friedman in order to remove Fight from the house as called for in the divorce papers. As the officers approached the house, Fight began shooting at them from inside the house. Officer Friedman was wounded in the altercation, and Fight eventually surrendered. The State charged Fight with three counts of attempted murder, one for each of the three officers, as well as one count of battery with a deadly weapon and one count of criminal mischief. Following a jury trial, Fight was convicted of the three counts of attempted murder and the single count of criminal mischief. It is from these convictions that this appeal ensues.

Fight first contends that the State failed to present sufficient evidence to sustain his convictions of three counts of attempted murder. Particularly, Fight claims that the State did not prove that he had the specific intent required for an attempted murder conviction.

 Our standard of review with regard to sufficiency claims is well settled. We neither weigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence favorable to the verdict and all reasonable inferences which can be drawn therefrom. *Newman v. State*, 677 N.E.2d 590, 593 (Ind.Ct.App. 1997). If there is substantial evidence of probative value from which a trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. *Id.*

 In order to obtain a conviction for attempted murder, the State must prove beyond a reasonable doubt that Fight was acting with the specific intent to commit the crime of murder and that he engaged in an overt act which constituted a substantial step toward the commission of the crime. *Robinson v. State*, 730 N.E.2d 185, 194–95 (Ind.Ct.App.2000), *trans. denied*, 741 N.E.2d 1253; Ind.Code §§ 35–42–1–1 and 35–41–5–1. The intent to kill may be inferred from the intentional use of a deadly weapon in a manner likely

to cause death. *Id.* at 195; *see also Booker v. State,* 741 N.E.2d 748 (Ind.Ct.App. 2000) (discussing that, as an evidentiary matter, trier of fact may infer that defendant acted with conscious objective to kill from circumstances surrounding deliberate use of deadly weapon in manner likely to cause death or serious bodily injury; however, mere use of deadly weapon in such a manner does not necessarily permit such a conclusion). Fight offers the fact that he is an experienced marksman, who could have killed the officers if he had wanted to, to demonstrate that he had no intent to kill the officers because only one officer was injured. This is a self-serving argument that we are not inclined to accept.

Here, the State presented evidence sufficient to establish Fight's intent to kill when he shot at the officers. The evidence reveals that upon receiving the divorce papers, Fight told Officer Wilson that the only way he was leaving the house was "in a body bag." (Tr. 190). When the three officers returned to the residence together, Officer Friedman saw Fight's face painted with a "death face" when Fight peeked through the front door of the house. (Tr. 330). Shortly thereafter, Fight began firing shots at the officers through the windows of the house. The first shot was in the direction of Officer Wilson who felt debris from the shot hitting his head. Additional shots were then fired at Officer Kieser and the other officers as they ran for cover. Finally, as Officer Friedman was taking cover behind a telephone pole, he heard a "loud pop," saw a muzzle flash, then heard a spraying noise and felt a stinging sensation in his leg. Pellets from the shotgun blast hit the grass in front of him, as well as hitting the telephone pole, his leg and his bulletproof vest. The force of the blast caused Officer Friedman to fall over the embankment just behind him.

Fight also shot at and damaged the police vehicles. A deer slug was shot through the windshield and the passenger headrest and out the rear window of one vehicle, and the second vehicle, including the windshield, was covered with dents from shotgun pellets. Further, the officers testified that during the altercation, Fight continued to shout that he would not be taken out of the house alive. This is sufficient evidence for a jury to conclude beyond a reasonable doubt that Fight harbored the specific intent to kill the officers.

Next, Fight asserts that his convictions and sentences for three counts of attempted murder are violative of his constitutional right against double jeopardy as provided by the Fifth Amendment of the federal constitution and Article I, Section 14 of the Indiana Constitution. Specifically, Fight argues that his right against double jeopardy has been violated because the same evidence establishes the material elements of each of his three convictions of attempted murder.[1]

Our supreme court has held that the statutory elements test and the actual evidence test are both components of the double jeopardy analysis for same offenses under the Indiana Constitution. *Richardson v. State,* 717 N.E.2d 32, 49–50 (Ind. 1999). In so deciding, the Court held that two or more offenses are the same offense in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essen-

---

1. Although Fight claims a violation of both the U.S. Constitution and the Indiana Constitution, he provides argument and analysis only with regard to his state claim. There-fore, we limit our discussion to the allegation of a violation of his rights under the Indiana Constitution.

tial elements of another challenged offense. *Id.* at 49.

Here, Fight only challenges his convictions with regard to the second test, termed the "actual evidence test." An explanation of this test is set out in *Richardson:*

> Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

717 N.E.2d at 53.

In order to convict Fight of the attempted murder of the three officers, the State had to prove that Fight (1) acting with the specific intent that death result (2) engaged in conduct that constitutes a substantial step toward killing Officer Wilson. Ind.Code §§ 35–41–5–1 and 35–42–1–1. In addition, the State had to prove that Fight (1) acting with the specific intent that death result (2) engaged in conduct that constitutes a substantial step toward killing Officer Kieser and that Fight (1) acting with the specific intent that death result (2) engaged in conduct that constitutes a substantial step toward killing Officer Friedman. Ind.Code §§ 35–41–5–1 and 35–42–1–1. Having established the essential elements of the three offenses with which Fight claims error, we now turn to the evidence presented at trial.

■ At trial, the State presented evidence that Fight shot at each of the officers, seriously wounding Officer Friedman. The evidence proving the attempted murder of Officer Wilson is the first round of shots fired by Fight out the windows of the house at Officer Wilson. The second set of shots fired by Fight was directed at Officer Kieser as he ran for cover following the first set of shots. This evidence establishes proof of the attempted murder of Officer Kieser. Finally, more shots were fired from inside the house by Fight at Officer Friedman. These shots hit Officer Friedman in the leg, causing nerve damage. This evidence proves the attempted murder of Officer Friedman. Moreover, all of these shots occurred following Fight's indication that he would not be taken from the house alive. In fact, Fight concedes that each of the three attempted murder convictions "clearly require the proof of an additional element," that being the identity of each victim. Appellant's Brief at 10. Based upon our review of the evidence presented, we find Fight has not demonstrated a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one count of attempted murder may also have been used to establish the essential elements of the other two counts of the attempted murder of the officers. Thus, we conclude that Fight's right against double jeopardy was not violated.

Finally, Fight argues that the trial court erred in sentencing him. Fight first contends that the trial court erred in sentencing him on three separate counts of attempted murder because his convictions of those three counts violated the principles of double jeopardy. Because we determined above that Fight's constitutional right against double jeopardy was not violated by his convictions of three separate counts of attempted murder, we need not address this issue.

■ Although particular assertions and argument thereon are sparse, it appears that Fight next claims that some of the

aggravating circumstances used by the court are not valid factors and that the trial court did not give proper weight to the mitigating circumstances. Sentencing is a determination within the sound discretion of the trial court, and we will not reverse the trial court's decision absent an abuse of discretion. *Allen v. State,* 722 N.E.2d 1246, 1250 (Ind.Ct.App.2000). In sentencing Fight, the trial court relied on the following aggravating factors: the risk that Fight would commit another crime; the nature and circumstances of the crimes committed; Fight's need for correctional or rehabilitative treatment that can best be provided by commitment to a penal facility; imposition of a reduced or suspended sentence would depreciate the seriousness of the crime; and the victims were uniformed officers. The trial court found only one mitigating circumstance: Fight's lack of criminal history.

 In order for the aggravator regarding the need for correctional treatment at a penal facility to support an enhanced sentence, the court must give a specific and individualized reason why the defendant is in need of correctional treatment that can best be provided by a period of incarceration in excess of the presumptive sentence. *Hatchett v. State,* 740 N.E.2d 920, 928–29 (Ind.Ct.App.2000), *trans. denied,* 753 N.E.2d 8 (2001). Here, the court did not provide this mandatory explanation and improperly considered Fight's need for correctional treatment as an aggravating factor. Likewise, the trial court improperly considered as an aggravating factor that imposing a reduced sentence would depreciate the seriousness of the crime, where there was no indication that the court was considering imposing a sentence shorter than the presumptive term. As we have stated many times previously, this particular aggravator cannot be used to justify an enhanced sentence,

but may only be used when the judge considers imposing a sentence shorter than the presumptive one. *Id.* at 929.

 When a trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Id.* We further note that a single aggravating circumstance may serve to enhance a sentence. *Allen,* 722 N.E.2d at 1253. Thus, although the trial court improperly considered two of the five aggravating factors in determining Fight's sentence, the remaining proper aggravators are sufficient to enhance Fight's sentence.

 With respect to mitigating factors, it is within a trial court's discretion to determine both the existence and the weight of a significant mitigating circumstance. *Id.* at 1251. Given this discretion, only when there is substantial evidence in the record of significant mitigating circumstances will we conclude that the sentencing court has abused its discretion by overlooking a mitigating circumstance. *Id.* Although the court must consider evidence of mitigating factors presented by a defendant, it is neither required to find that any mitigating circumstances actually exist, nor is it obligated to explain why it has found that certain circumstances are not sufficiently mitigating. *Id.* at 1252. Additionally, the court is not compelled to credit mitigating factors in the same manner as would the defendant. *Id.*

 Here, the trial judge stated that although he did not necessarily agree with all of Fight's proffered mitigating factors, he would consider them. Later in the sentencing hearing, he acknowledged Fight's lack of criminal history as an acceptable mitigating circumstance, and the record clearly reflects that the trial court sufficiently evaluated and balanced the

mitigating and aggravating circumstances. We find no error.

Fight also makes a veiled argument that his sentence is manifestly unreasonable. We will not revise a sentence that is authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Allen,* 722 N.E.2d at 1250; Ind. Appellate Rule 17(B). As our appellate courts have stated numerous times, the issue is not whether in our judgment the sentence is unreasonable, but whether it is "clearly, plainly, and obviously so." *Id.*

Fight was convicted of three counts of attempted murder, all as Class A felonies, as well as one count of criminal mischief, a Class D felony, and the court sentenced him to thirty (30) years with ten (10) years added for aggravating circumstances on each of the three counts of attempted murder and one and one-half (1½) years with one and one-half (1½) years added for aggravating circumstances for his conviction of criminal mischief. The sentences for two of his three attempted murder convictions and the sentence for the criminal mischief conviction are all to be served concurrently, and the sentence for Fight's conviction of the attempted murder of Officer Friedman is to be served consecutive to the other terms. The sentences imposed upon Fight are within the realm of statutorily authorized sentences for Class A and Class D felonies. *See* Ind.Code §§ 35–50–2–4 and 35–50–2–7.

Next, we must consider whether Fight's sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Fight was found guilty of attempting to murder three police officers. Although in his brief Fight continues to argue that he was not trying to kill the officers, the evidence paints a much different picture. The evidence demonstrates that Fight, knowing that officers were returning to his home to serve him with divorce papers and escort him out of the home as directed by the court's order, prepared himself for their return by arming himself with weapons and ammunition. He then shot at the officers from inside his house behind covered windows. Moreover, although Fight attempts to downplay the injury, some of his shots caused permanent nerve damage to one officer's leg, and other shots narrowly missed another officer's head. The officers arrived in marked cars and were all in uniform. Based upon the nature of this offense and the character of the offender, we conclude that Fight's sentence is not manifestly unreasonable.

As his final argument, Fight claims that the trial court improperly considered the offense of attempted murder as a crime of violence pursuant to Ind.Code § 35–50–1–2 in order to sentence Fight to an aggregate term of eighty (80) years.

Ind.Code § 35–50–1–2 provides sentencing guidelines with regard to consecutive and concurrent sentences. The statute defines an "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place and circumstance." Ind.Code § 35–50–1–2(b). The section further provides that when a defendant is sentenced for felony offenses arising out of an episode of criminal conduct, the sum total of the consecutive terms of imprisonment for those offenses cannot exceed the presumptive sentence for a felony which is one class of felony higher than the most serious of the felonies for which the defendant has been convicted. This is true unless the offenses are "crimes of violence." By way of definition, the statute simply lists the included crimes. *See* Ind.Code § 35–50–1–2(a). Although this statute was amended this year to include attempted murder as a crime of violence, prior to that time attempted murder was excluded from the list. *See* Ind.Code § 35–50–1–2(a)(2).

However, our supreme court in *Greer v. State,* 684 N.E.2d 1140 (Ind.1997) held that the statutory limitation of Ind.Code § 35–50–1–2 will apply to an attempted murder conviction unless the defendant received " 'an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury.' " *Greer,* 684 N.E.2d at 1142 n. 7.[2] Armed with the analysis provided in Greer, we turn now to the case at bar.

■ We first note that Fight was sentenced for three counts of attempted murder and one count of criminal mischief arising from the events of March 30, 2000. The parties essentially agree that these offenses constitute an episode of criminal conduct as defined in Ind.Code § 35–50–1–2, and the trial court treated them as such. Having said that, *Greer* directs us to first identify the presumptive sentence for a felony that is one class higher than the most serious felony with which Fight was charged. The most serious felony of which Fight was convicted was attempted murder, a Class A felony. The felony higher than a Class A felony is murder, which has a presumptive term of fifty-five (55) years. Ind.Code § 35–50–2–3. Therefore, fifty-five (55) years is the maximum term of imprisonment to which Fight can be sentenced for his convictions arising out of this episode of criminal conduct, unless attempted murder is considered a crime of violence.

Thus, the next step of the analysis requires us to determine whether the attempted murder conviction for which Fight received a consecutive sentence constitutes a conviction for which Fight (1) received an enhanced penalty because the felony resulted in serious bodily injury and, if so, Fight (2) knowingly or intentionally caused serious bodily injury. There are several matters relevant to this inquiry. First, Fight received an enhanced sentence for the attempted murder of Officer Friedman. Attempted murder is a Class A felony for which the presumptive sentence is thirty (30) years. Ind.Code § 35–50–2–4. The trial court enhanced Fight's sentence for this conviction to forty (40) years. Second, the victim, Officer Friedman, suffered serious bodily injury. "Serious bodily injury" is defined as: "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, permanent or protracted loss or impairment of the function of a bodily member or organ, or loss of a fetus." Ind.Code § 35–41–1–25. Officer Friedman was hit by shotgun pellets in his leg which caused nerve damage. At the time of trial and sentencing, part of his foot was numb, and he walked with a limp.

The third relevant factor is whether Fight knowingly and intentionally caused Officer Friedman's serious bodily injury. While Fight claims that he did not shoot at the officers with the intent to kill them, the evidence belies his assertions. The jury convicted Fight of attempted murder which requires a mens rea of intent to kill, and serious bodily injury indisputably occurred as a result of the offense. The final remaining question is whether the sentence for the conviction in question was enhanced because the felony resulted in serious bodily injury. Although the tran-

---

**2.** The court provided its reasoning for this holding as follows: "It appears to us that the legislature's intent with the statute here was to limit the use of consecutive sentences except where serious bodily injury occurred. Because the crime of attempted murder will at times involve serious bodily injury (as here) and at times not (as where a defendant fires a weapon at the victim but misses), we think it more consistent with the legislature's intent to treat attempted murder as a felony distinct from murder." *Greer,* 684 N.E.2d at 1142 n. 7.

script is not absolutely explicit on this point, at Fight's sentencing hearing the trial court indicated that Fight's sentence for his conviction of the attempted murder of Officer Friedman was enhanced based upon the nature and circumstances of the offense, the fact that the victim was an officer in uniform, and because of the nature of Officer Friedman's injury. The trial judge stated the definition of the term "serious bodily injury," applied it to Officer Friedman's injury, and concluded that his injury was indeed a serious bodily injury for which consecutive sentences would be ordered. Thus, Fight's conviction for the attempted murder of Officer Friedman was exempted from the term of imprisonment limitation imposed by Ind.Code § 35–50–1–2, and, therefore, the trial court did not err by considering the offense a crime of violence and sentencing Fight to an aggregate term of eighty (80) years.[3]

Based upon the foregoing, we conclude that there was sufficient evidence to support Fight's convictions of three counts of attempted murder, that these convictions and the sentences thereon are not violative of Fight's constitutional right against double jeopardy, and that the trial court properly sentenced Fight.

Affirmed.

RILEY, J., and NAJAM, J., concur.

---

**3.** We note that in *Jackson v. State,* 698 N.E.2d 809 (Ind.Ct.App.1998), *trans. denied,* 706 N.E.2d 171, a panel of this Court determined that the restrictions of Ind.Code § 35–50–1–2 did not apply to the consecutive sentence for an attempted murder conviction even though attempted murder was not included at the time in Ind.Code § 35–50–1–2 as a crime of violence. The decision centered on aggravated battery as a lesser included offense of attempted murder. However, recently in *El-lis v. State,* 736 N.E.2d 731, 736–37 (Ind. 2000), our supreme court questioned the decision in *Jackson,* saying that the supreme court case on which the *Jackson* decision is based is ill-suited for the purpose for which it was used because the issue in that case was whether aggravated battery could be a lesser included offense of attempted murder as part of its determination regarding jury instructions.