# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 13 2019, 9:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Shawn Twitty
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Shawn Twitty,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 13, 2019

Court of Appeals Case No.
19A-CR-500

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-9503-CF-33600

**Sharpnack, Senior Judge.**

# Statement of the Case

Shawn Twitty appeals from the denial of his motion to correct erroneous sentence, contending that the doctrine of amelioration applies. Finding that Twitty has already challenged his consecutive sentences, raising the same issue several times, we affirm the decision of the trial court, rejecting his most recent challenge.

# Issue

Twitty presents the following issue which we restate as the following question: Did the trial court err by denying Twitty's motion to correct erroneous sentence?

# Facts and Procedural History

In a memorandum decision, a panel of this court affirmed Twitty's convictions of three counts of attempted murder, each as a Class A felony, and one count of carrying a handgun without a license, a Class A misdemeanor, and affirmed the trial court's sentencing decision. *Twitty v. State*, No. 49A05-9601-CR-16, slip op. at 2-3 (Ind. Ct. App. Aug. 18, 1997), *trans. denied* ("Twitty I"). The facts recited in the direct appeal follow:

> On the night of March 4, 1995, Garcia Scott, Chabwera Underwood, and Craig Mushatte went with a group of friends to the Barritz Nightclub in Indianapolis. While they were there, a fight broke out between the group and Shawn Twitty and his friends. After the two groups were ejected from the club, the fight continued in the parking lot, where Scott and Underwood

were both shot in the head. Scott was permanently blinded as a result of the shooting and Underwood suffered irreversible memory loss and motor skills impairment.

At Twitty's jury trial, Mushatte testified that he saw Twitty remove a gun from the trunk of a car and shoot it at Mushatte, Scott, and Underwood. Mushatte testified that he believed the weapon was a nine millimeter gun. Twitty and others left in the car from which Twitty had removed the gun. The car was later found at Twitty's residence. Police at the crime scene found a spent bullet jacket which a ballistics expert testified was fired from a nine millimeter gun. Two days later, Mushatte identified Twitty in a photo array as the person who fired the gun.

Twitty received forty-five year sentences on each of the three attempted murder counts and a one year sentence on the fourth count, carrying a handgun without a license. The sentences for counts I and II were to be served consecutively, and the sentences on counts II and IV were to be served concurrently with the sentences for counts I and II.

[4] Twitty filed a petition for post-conviction relief on November 9, 1998. After amendments by counsel, among the issues presented to the post-conviction court was that appellate counsel did not argue on direct appeal that the trial court erred in imposing consecutive sentences. The post-conviction court denied Twitty's petition, and the denial was affirmed on appeal. *Twitty v. State*, 49A02-0503-PC-199 (Ind. Ct. App. Sept. 13, 2005) ("Twitty II").

[5] On January 28, 2019, Twitty moved to correct erroneous sentence, raising the doctrine of amelioration in support of that motion. His motion was denied and this appeal ensued.

# Discussion and Decision

[6] Twitty challenges the denial of his motion to correct erroneous sentence, in which he cited Indiana Code section 35-38-1-15 (1983), which provides as follows:

> If the convicted person is erroneously sentenced, the mistake does not render the sentence void. The sentence shall be corrected after written notice is given to the convicted person. The convicted person and his counsel must be present when the corrected sentence is ordered. A motion to correct sentence must be in writing and supported by a memorandum of law specifically pointing out the defect in the original sentence.

[7] Our Supreme Court has stated that the purpose of the statute "is to provide prompt, direct access to an uncomplicated legal process for correcting the occasional erroneous or illegal sentence." *Robinson v. State*, 805 N.E.2d 783, 785 (Ind. 2004) (citation omitted). A motion to correct erroneous sentence is appropriate only when the sentencing error is "clear from the face of the judgment imposing the sentence in light of the statutory authority." *Id.* at 787. Claims that require consideration of the proceedings before, during, or after trial may not be presented by way of a motion to correct erroneous sentence. *Davis v. State*, 937 N.E.2d 8, 11 (Ind. Ct. App. 2010), *trans. denied.* Such claims should instead be addressed on direct appeal or through post-conviction relief. *Robinson*, 805 N.E.2d at 787. A motion to correct erroneous sentence is a narrow remedy, and a reviewing court will strictly apply the requirement of a facially erroneous sentence. *Id.*

[8]     On appeal, we review a trial court's denial of a motion to correct erroneous sentence for an abuse of discretion. *Davis v. State*, 978 N.E.2d 470, 472 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

[9]     In the direct appeal of his convictions and sentencing, a panel of this court addressed Twitty's challenge to his sentence, which included an argument that the trial court erred by imposing consecutive forty-five year sentences for two of the attempted murder counts. Twitty's argument on direct appeal, as pertained to his sentence, specifically referred to Indiana Code section 35-50-1-2(c), limiting the total of the consecutive terms of imprisonment for felony convictions arising out of a single episode of criminal conduct. The exceptions listed in the subsection of the statute included murder and felony convictions for which an enhanced sentence is imposed because the defendant knowingly and intentionally caused serious bodily injury to the victim. Twitty argued, without citation to authority, that because attempted murder is a crime separate from murder, and, thus not among the statutory exceptions, he could not be sentenced to a term of more than fifty years, which was the presumptive sentence for murder at the time. *See* Ind. Code § 35-50-2-3 (1994).

[10]    Instead of deeming the issue waived for failure to cite to authority, we considered the argument and reviewed case law, ultimately concluding that the statutory reference to murder convictions necessarily included attempted murder convictions as exempt from consecutive sentencing limitations. Twitty I, slip op. at 5-7.

[11]     In 1998, Twitty filed a petition for post-conviction relief. After amendments by counsel, among the issues presented to the post-conviction court was whether Twitty had received ineffective assistance of trial and appellate counsel. On January 12, 2005, the post-conviction court denied the petition.

[12]     Next, Twitty appealed the denial of his petition for post-conviction relief. As respects his sentencing challenges, Twitty presented those arguments in his claim of ineffective assistance of appellate counsel. Shortly after our decision in Twitty's direct appeal, our Supreme Court handed down a case discussing how to treat consecutive sentencing in attempted murder cases. *See Greer v. State*, 684 N.E.2d 1140 (Ind. 1997).

[13]     *Greer* defined the steps to be taken in analyzing whether consecutive sentences are warranted under the sentencing statute in effect at that time. The first step is to identify the presumptive sentence for the felony that is one class higher than the most serious felony with which the defendant was charged. 684 N.E.2d at 1142. Murder is the next highest offense, therefore, the presumptive sentence is fifty years. Regarding Greer's convictions for three counts of attempted murder and one count of criminal deviate conduct, for which consecutive sentences were imposed, the next step is to determine if the defendant received an enhanced penalty because the felony resulted in serious bodily injury, and, if so, did the defendant knowingly or intentionally cause the serious bodily injury. *Id.*

[14]   In Twitty's case, the trial court enhanced all three attempted murder convictions to forty-five years based in pertinent part on the seriousness of the crime. Twitty I, slip op. at 8. We found that the evidence was sufficient to support Twitty's conviction, which meant that his conduct was done knowingly and intentionally. *Id.* at 5. The specific circumstances of the crime, beyond that which is needed to support an attempted murder conviction, establish that the enhanced penalty was imposed because the felony resulted in serious bodily injury. Scott was permanently blinded because of the shooting and Underwood suffered irreversible memory loss and motor skills impairment.

[15]   Twitty argued in his petition that appellate counsel should have cited to *Greer* in the petition to transfer filed in his case. When reviewing this argument, we noted that the Supreme Court reached the same conclusion as did our court in Twitty's direct appeal, but reached that conclusion applying a different rationale. After reciting Twitty's burden of establishing the claim and the deference afforded to appellate counsel's choice of which issues to raise on appeal, we concluded that appellate counsel was not ineffective. Twitty II, slip op. at 17-19. Citation to *Greer* would not have provided Twitty the sentencing relief he was seeking.

[16]   Twitty argues that his consecutive sentences for two of the attempted murder counts is erroneous on the face of the sentencing order. The State contends that: (1) the sentencing order is not erroneous on its face; (2) the doctrine of amelioration is inapplicable; and (3) Twitty's claim is barred by res judicata. We have considered each of the arguments presented by the parties and

conclude that the dispositive argument is that Twitty's claim is barred by res judicata. Thus, the trial court did not err in denying the motion.

[17] Twitty's support for his motion to correct erroneous sentence is his claim that the consecutive sentences for two of his three attempted murder convictions constituted an erroneous sentence under the doctrine of amelioration and his citation to the timing of amendments to Indiana Code section 35-50-1-2 and case law addressing how to treat attempted murder convictions for purposes of consecutive sentencing.

[18] Twitty unsuccessfully challenged his consecutive sentences on direct appeal and transfer was denied by the Supreme Court. Twitty unsuccessfully challenged his consecutive sentences in a petition for post-conviction relief. This Court affirmed the denial of Twitty's petition. Further, Twitty challenged his consecutive sentences in a motion to correct erroneous sentence.

[19] "*Res judicata*, whether in the form of claim preclusion or issue preclusion (also called collateral estoppel), aims to prevent repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies." *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013). Here, Twitty has raised the same or similar challenges to his consecutive sentences, each time resulting in a denial of relief. We conclude that Twitty's argument is barred by res judicata. Thus, the trial court did not err by denying Twitty relief.

# Conclusion

[20] Because Twitty's motion to correct erroneous is barred by res judicata, we conclude that the trial court did not err by denying Twitty the relief requested.

[21] Affirmed.

Kirsch, J., and Robb, J., concur.